# Exhibits

## A through P

(See Lower right Corner for quick Referrence)

# DECLARATION

Pursuant to 28 U.S.C. 1746 I Declare the aftermentions are true & factual;

I Jimmie Mandoza B-76378, was incarcerated at Western Illinois Correction Center, on April 12, 2014.

- During this time "orange crush" tactical team held a Institutional Shake Down. In which they came to our cell and I was given one direct order to turn and face the back wall of the cell, while my cellmate Tyler Walker R-48022 was being stripped searched at the front of the cell. Then before I had time to respond the tactical team entered the cell claiming I wasn't complying with the direct order. During this time my cellmate Tyler Walker R-48022 was also placed in restraints without being given any direct orders at all. Then we were both Drug from the cell to seg. During this time my cellmate recieved injuries to his feet from being Drug by the officers.

OVER ⤵ Exhibit A

Signed: Mendoza B76378

Date: 7-3-14

2500 Rt. 99 S
MT. Sterling, IL
62353

Pursuant to 28 U.S.C. 1746, I Declare under penalty of perjury the enclosed mentioned is true & factual. I was not bribed, forced, threatened, or paid to make this Declaration. If Called, I will testify, and state the Same.

| Illinois<br>Department of<br>**Corrections** | ADMINISTRATIVE<br>DIRECTIVE | Number | 05.01.173 |
|---|---|---|---|
| | | Page | 1 of 6 |
| | | Effective | 5/1/2009 |
| Section | 05 | Operations | |
| Subsection | 01 | Security | |
| Subject | 173 | Calculated Use of Force Cell Extractions | |

## I. POLICY

### A. Authority

20 Ill. Adm. Code 501

730 ILCS 5/3-6-4

### B. Policy Statement

In accordance with Department Rule 501, the Department authorizes the use of force to extract an offender from a cell only as a last resort or when other means are unavailable or inadequate and only to the degree reasonably necessary to control the situation.

## II. PROCEDURE

### A. Purpose

The purpose of this directive is to standardize the equipment and the procedure for calculated use of force cell extractions. These procedures are not applicable in situations that require an immediate use of force.

### B. Applicability

This directive is applicable to all facilities within the Department.

### C. Internal Audits

An internal audit of this directive shall be conducted at least semi-annually.

### D. Designees

Unless specifically stated otherwise, individuals specified in this directive may not delegate stated responsibilities to another person.

### E. Definitions

1. Force - physical contact used to coerce or prevent some action on the part of an offender. Force may include the use of chemical agents.

2. Calculated use of force cell extraction - movement of an offender from a cell to another location by the Tactical Team.

---

| ADMINISTRATIVE<br>DIRECTIVE | Effective | 5/1/2009 | Page | 2 of 6 | Number | 05.01.173 |
|---|---|---|---|---|---|---|

Illinois Department of Corrections

3. Video tape - any visual recording media.

### F. General Provisions

1. **Use of force shall be terminated as soon as the need for force is no longer necessary.**

2. Nothing in this directive shall preclude staff from immediately using force or applying restraints when an offender's behavior constitutes a threat to self, others, property, or the safety and security of the facility.

3. Restraints shall be applied in accordance with Administrative Directive 04.04.103 or 05.01.126 as appropriate.

4. Failure by the offender to comply with the orders to vacate is considered a threat to self, others, and the safety and security of the institution and may result in the use of chemical agents in accordance with Department Rule 501.70.

5. Unless it is not practical or safe, cell extractions shall be video recorded from the time circumstances warrant a cell extraction until the offender is placed in the designated cell.

   **NOTE:** Any interruption in recording, including but not limited to changing a video tape or battery shall be documented on the video tape.

6. Use of force cell extractions shall be performed by certified Tactical Team members as designated by the Tactical Team Commander. The Tactical Team Commander shall designate one or more members who may function as the Tactical Team Leader.

### G. Equipment

1. The following equipment items shall be available to and used by Tactical Team members when conducting a calculated use of force cell extraction.

   a. Orange jump suits;

   b. Protective helmets and full face shields;

   c. Knife resistant vests;

   d. Protective gloves;

   e. Restraints minimally including hand cuffs and leg irons;

   f. Protective convex shields;

   g. Batons (36 inch length by 1.5 inches in diameter of oak or hickory);

   h. Gas masks;

   i. Leather boots, purchased by the employee, a minimum of 8 inches high for ankle protection; and

Exhibit B

1. Video camera with a minimum of two batteries and a video tape.

2. Chemical agents shall be available and may be used in accordance Department Rule 501.70.

3. The following equipment items may be used by Tactical Team members when conducting a calculated use of force cell extraction.

   a. Throat protectors (cut resistant); and

   b. Elbow, groin, knee, and shin protectors.

H. **Tactical Team Structure for Calculated Use of Force Cell Extractions**

The Tactical Team shall consist of six certified Tactical Team members for a single offender cell extraction and seven certified Tactical Team members for a multiple offender cell extraction. One member of the team shall serve as the Tactical Team Leader; however, the team leader shall not be the person responsible for video recording the incident.

1. For a single offender cell extraction, the Tactical Team Commander shall designate members who shall be responsible for following functions.

   a. The shield person (also known as Number 1 person) shall use a shield and be the first member to enter the cell; secure the offender against the wall, bed, or floor, secure the offender's head and upper body, and orally communicate with the offender.

   b. Two members (also known as Number 2 and 3 persons) shall secure the offender's arms and hands and place restraints on the offender's wrists and ankles.

   c. A member (also known as Number 4 person) shall secure the doorway with a baton to prevent the offender from escaping, and if necessary, to assist in the application of restraints.

   d. A member (also known as Number 5 person) shall provide direct orders to the offender prior to the extraction; open the cell door to initiate the extraction; remain outside of the cell with a baton in the event the offender should attempt to escape from the cell; and deploy chemical agents if necessary.

   e. The video recording member (also known as Number 6 person) shall remain outside of the cell and video record the extraction including but not limited to: the warnings to the offender prior to the use of force; the issuance of three direct orders to vacate the cell; the notification that failure to comply constitutes a threat to self, others, and the safety and security of the institution; removal of the offender from the cell; escorting the offender for and treatment of medical care; and placement of the offender in a designated area.

2. ==For a multiple offender cell extraction, the Tactical Team Commander shall designate members who shall be responsible for following functions.==

---

   a. The shield person (also known as Number 1 person) shall use a shield and be the first member to enter the cell; secure the first offender encountered against the wall, bed, or floor; secure the offender's head and upper body; and orally communicate with the offender.

   b. The assistant shield person (also known as Number 2 person) shall use a shield, secure the second offender encountered against the wall, bed, or floor; secure the offender's head and upper body; and orally communicate with the offender.

   c. A member (also known as Number 3 person) shall provide immediate back-up to the team member in most need of assistance by securing the offender's arms and hands and placing restraints on the offender's wrists and ankles;

   d. A member (also known as Number 4 person) shall provide immediate back-up to the team member with the other offender by securing the offender's arms and hands and placing restraints on the offender's wrists and ankles.

   e. A member (also known as Number 5 person) shall provide immediate back-up to the team members with the most combative offender by securing the offender's arms and hands for placement of restraints.

   f. A member (also known as Number 6 person) shall provide direct orders to the offender prior to the extraction; open the cell door to initiate the extraction; secure the doorway with a baton to prevent an offender from escaping, and if necessary, deploy chemical agents and assist in the application of restraints.

   g. ==The video recording member (also known as Number 7 person) shall remain outside of the cell and video record the extraction including but not limited to: the warnings to the offender prior to the use of force; the issuance of three direct orders to vacate the cell; the notification that failure to comply constitutes a threat to self, others, and the safety and security of the institution; removal of the offender from the cell; escorting the offender for and treatment of medical care; and placement of the offender in a designated area.==

I. **Calculated Use of Force Cell Extraction Procedures**

1. Once an officer has ordered an offender to move from the cell and the offender refuses, the officer shall report the refusal through the chain of command.

2. The Lieutenant or above shall again order the offender to vacate the cell. If the offender refuses, the Lieutenant or above shall report the refusal through the chain of command.

3. ==On site personnel shall begin video recording the offender's actions.==

4. When time and circumstances permit, the Shift Commander shall obtain the approval of the Chief Administrative Officer for calculated use of force cell extractions. In all other situations, the Shift Commander or above shall approve the cell extraction.

5. ==If the decision is made to proceed with a cell extraction, the Shift Commander shall activate the Tactical Team.==

Exhibit C

6. The Zone Lieutenant or above shall:

   a. Secure the area by removing all non-involved staff and non-secured offenders.

   b. Ensure the video camera is present and recording the offender's actions; and

   c. Notify medical staff of the pending cell extraction.

7. Upon notification of a pending cell extraction, Health Care staff shall check the offender's medical file for pertinent medical information and be present in a secure area that is close to, but not in the immediate vicinity of the cell extraction.

8. Upon arrival of the Tactical Team, the Zone Lieutenant or above shall:

   a. Brief the Tactical Commander of pertinent information;

   b. Ensure the transfer of the video tape to a designated Tactical Team member to continue recording;

   c. Notify the Duty Administrative Officer of the incident, pending cell extraction, and other information as it becomes available; and

   d. Be available, if needed, but remain out of the immediate area of the cell extraction.

9. Prior to the use of force, the Tactical Team leader shall:

   a. Orally attempt to obtain the offender's voluntary compliance to vacate the cell or area prior to the use of force. In cells or areas with two or more offenders, each offender shall be given the opportunity to comply and be voluntarily removed. Whenever possible, offenders who comply shall be placed in restraints and removed prior to action being taken.

   b. Issue three direct orders for the offender to comply.

   c. Advise the offender that failure to comply with the orders to vacate may result in the use of chemical agents.

10. If the offender does not vacate the cell voluntarily, the Tactical Team shall remove the offender from the cell.

11. Following removal from the cell, the Tactical Team shall escort the offender to a designated area to be examined by Health Care staff.

12. Following the completion of the cell extraction including medical care, the Tactical Team member who video recorded the incident shall:

    a. Label the video tape with the date and location of the incident, offender name(s) and number(s), and the name of the employee who recorded the incident;

   b. If available, activate any security measures such as breaking the security tab on the VHS (Video Home System) video tape to prevent the video tape from being erased or recorded over.

   c. Tag the video tape as evidence and process it in accordance with Administrative Directive 01.12.112.

13. Unless otherwise directed to maintain longer, the video tape shall be retained in a secure area designated by the Chief Administrative Officer for three years following the date of the extraction.

14. Each employee who participated in the cell extraction or who was otherwise involved shall complete an Incident Report and other appropriate reports documenting the incident in its entirety. When necessary, the incident shall be reported in accordance with Administrative Directive 01.12.105.

15. The Shift Commander shall ensure:

    a. A search of the involved area is completed after removal of the offender;

    b. The area is decontaminated if chemical agents were used; and

    c. Appropriate reports are completed and processed.

16. The Shift Commander or above shall debrief with the Tactical Team.

Authorized by:

Roger E. Walker Jr.
Director

Supersedes:
05.01.173    AD    8/1/1999
And as amended 9/1/1999 and 8/1/2001



Exhibit D

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

__Western Illinois Correctional__ Center

**Offender Information:**

Last Name: Walker
First Name: Tyler
MI:
ID#: R48022

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/12/14 S. 8A | **Nurse / CMT TX Protocol: Abrasions** | **MD/PA/NP REFERRRAL IF:** |
| | - What caused the injury (accidental, work related, assault, self-inflicted)? during Leg Walk. | P. – Wounds with ground-in debris or needing irrigation |
| | - Where did it happen? On the Walk. | - Uncontrolled bleeding |
| | - What time did it happen? 730 - 8A | - Those over joints or covering a large and/or deep area |
| | - Do you have a medical condition or are you taking any medication Ø that would cause excessive bleeding or problems healing? | - Assault wounds to head, face, chest, back or abdomen |
| | - Do you have any allergies to medication? NKA. | - When exchange of body fluids may have occurred |
| | - When was your last tetanus? Unknown. (R) deltoid | - Laceration of eyelids, lips, ears or over joints/fingers |
| | | - Sustained in risk setting (barn, toilet, near sewage, etc.) |
| O. | T P R 98·86·16  B/P 134/86  Wt. 235 | - Wounds not responding to protocol treatment |
| | - Characteristic and severity of pain 7/10 - | - If injury is self-inflicted, refer to Mental Health |
| | - Size and depth of injury (L) great toe & big heels c superficial abrasions. | A&D daily until healed. |
| | - Presence of contaminates or ground-in debris Ø | **Nursing Intervention:** (verify medications and allergies prior to treatment) |
| | - Bleeding or drainage; note amount and characteristics superficial - dead skin removed. | 1. Cleanse with antiseptic soap ✓<br>2. Apply direct pressure to wound and sterile compress if needed to control bleeding – elevate if possible ✓ |
| | - Swelling, edema and/or any disfigurement | 3. Acetaminophen 325 mg, 1 – 2 tablets t.i.d. PRN X 3 days<br>4. Dress abrasion as necessary ✓ |
| | - Tetanus toxoid status given. | 5. ~~Complete injury report~~ |
| | - Signs and symptoms of impaired circulation Ø | 6. If there is any break in the skin and the patient is not allergic to tetanus toxoid; Give 0.5 cc tetanus-diptheria toxoid IM if none in past ten years. (R) deltoid |

Distribution: Offender's Medical Record

Exhibit E

*Printed on Recycled Paper*

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

__Western Illinois Correctional__ Center

**Offender Information:**

Last Name: Walker   First Name: Tyler   MI: ___   ID#: R48020

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| | Continue: Abrasion | |
| | - Any disfigurement or loss of range of motion | (Observe for any allergic reaction after injection is administered) |
| | | **Patient Teaching:** |
| | | - Signs of infection (swelling, pus formation, redness, heat, streaking, etc.) |
| | | - Signs of impaired circulation (cold extremities, blanching nails, etc.) |
| | | - If injury could have been prevented, instruct on safety measures |
| | | - Need for follow-up referral at sick call if infection and/or impaired circulation develop |
| | | **FOLLOW-UP:** x2 wks. |
| | | Consider, and schedule if indicated, a wound check in the clinic or nurse sick call in 24 hours; PRN thereafter, depending on severity and the patients ability to provide self-care |
| | | $5.00 CO-PAY  YES  OR  (no) |
| A. | Abrasion | E. Sherr |

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**MENTAL HEALTH PROGRESS NOTE**

Exhibit F

| | |
|---|---|
| Offender Name: Walker, Tyler (Last, First, MI) | ID#: 1248022   DOB: 5/23/84 |

S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan

Session Date/Time: 5/28/14 9:10a     Session Duration: 20 minutes

Appearance: ☑ Appropriate ☐ Inappropriate
Behavior: ☑ Appropriate ☐ Inappropriate
Mood: ☑ Appropriate ☐ Inappropriate
Affect: ☑ Appropriate ☐ Inappropriate
Concentration: ☑ Appropriate ☐ Inappropriate
Memory: ☑ Appropriate ☐ Inappropriate
Speech: ☑ Appropriate ☐ Inappropriate
Thoughts: ☑ Appropriate ☐ Inappropriate

**Subjective, Objective, Assessment**

The consumer is being seen as his request. He states he continues to have a lot of anxiety. He states that he constantly thinks about what happened to him during the lockdown. He states that the whole experience is traumatizing and "You're another me." Talked about his anxiety and how he feels impacted since his meeting by the IAD team. Introduced thought stopping with him. Suggested that he may want to attend an anxiety reduction group. "I will think about it." He reports no problems with cellie. Reports S/I, H/I. He dismisses. Affect congruent to affect.

Axis I: Anxiety NOS  R/O PTSD
Axis II:
Axis III:
Axis IV:
Axis V:
MH Acuity Level:

Plan:
☐ Informed of crisis team and MHP request process
☐ Follow Up with MHP duration: PRN
☐ Refer to Psychiatry
☐ Return to psychiatry per provider orders
☐ Refer to Group:
☐ Encouraged to use techniques/coping skills developed
☐ Refer to Clinical Services
☐ Refer to Internal Affairs/Intelligence
☐ Encouraged to sign up for Nurse Sick Call

Writer mailed the grievance to the Warden's office through inner office mail.

Clinician Name (Print): Debbie Webb, LCSW
Facility: Western Illinois Correctional Center
Signature: Debbie Webb
Title: Clinical Social Worker

Distribution: Offender Medical File

Exhibit F

# ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

**Date:** 6-3-14
**Offender (Please Print):** Tyler Walker
**ID#:** R-48022
**Present Facility:** Mt. Sterling C.C.
**Facility where grievance issue occurred:** Mt. Sterling C.C.

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report: ___/___/___  Date of Report
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
- **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
- **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
- **Chief Administrative Officer,** only if EMERGENCY grievance.
- **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): On 4-12-14 I was in Mount Sterling C.C. 4-4-57, when C/O Myers' DOC 0317 from Lincon C.C. and the "orange crush" tactical team came to my cell. C/O Myers' told me and my cellmate Jimmie Mandoza to grab our state blues and our shoes. While we were doing this another "orange crush" tactical officer told my cellmate Jimmie Mandoza to face the back wall. Then without giving my cell mate time to respond to the first direct order. They entered the cell to get my cellmate. I was then placed with my head down next to the toilet and told to stay down. I did this with no problem. over →

**Relief Requested:** ① I would like to be transferred to a safer institution where I can go to school and better myself ② I would like C/O Myer fired. ③ And I would like to be compensated for my physical and mental abuse.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

**Offender's Signature:** Tyler Walker   **ID#:** R-48022   **Date:** 6, 3, 14
(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

**Date Received:** 6, 19, 14
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

**Response:** Inmate Issues   JUL 16 2014

Print Counselor's Name   Counselor's Signature   Date of Response

### EMERGENCY REVIEW

**Date Received:** ___/___/___
Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature   Date

Distribution: Master File; Offender   Page 1   DOC (Rev. 3/2012)

Exhibit G

I was then placed in handcuffs and pulled from the cell with no shoes and my pants unbuttoned. C/o Myer and another unknown officer then proceeded to drag me to Seg. Once outside the cellhouse C/o Myer pulls my pants the rest of the way off. This causes my boxers to drop around my ankels. [This should all be on the video tape from the cell house and on the walk] I was then forced to walk with my head between my legs, with no pants on and my genitels shewing to all of the female staff in health care and any inmate who was looking out of his window at the time. This whole time C/o Myer and the other unknown officer were laughing the whole time like it was all a game. Once I was in Seg. I realized that I was bleeding from both of my feet from being drug with no shoes on. So a nurse was called. While I was waiting C/o Mountain, who was also on the "orange crush" tactical team was coming into Seg. I explained to C/o Mountain what happened and told him I wasn't the person being non-compliant. He left and told me he would find what happened. A couple of minutes later Seg. recieved a call. And I was told I was going back to the unit. [Also Every officer who was working Seg. the Morning of 4-12-14 knows that this is the truth.] I was then escorted to health care to receive treatment for my bleeding feet. I then recieved a Tetanus shot and my feet where banaged. [This had to be done for the next 4-5 day but was only documented once] But while I was receiving treatment on 4-12-14 C/o Mountain came to health care to bring me my pants that were torn off outside 4 house and to tell me I was going back to the unit with him. But before I was finished receiving treatment C/o Mountain recieved phone call. After the call he started to leave and I asked "if I was going with him still" and he said, "It wouldn't look good." I was then escorted back to Seg. because it wouldn't look good not because I broke the rules. [Agin all of the nurses, officers and the video tapes from health care and on the walk should back up my story] This is the Third Grievance I've wrote on this matter and I still haven't herd nothing back. Can you <u>please help me.</u> I have been physicly abused and mentaly humiliated. My 8th amendment rights have been violated and I don't feel safe at this institution. I'm supposed to be rehabilitating my life, but I feel I am becomeing worse because of the constant harassment. I don't bother staff or write grievances, but this crossed the line.



1C32 H

Illinois
Department of
Corrections

Pat Quinn
Governor

S. A. Godinez
Director

Western Illinois Correctional Center
2500 Route 99 South
Mt. Sterling, IL 62353

Telephone: (217) 773-4441
TDD: (800) 526-0844

**MEMORANDUM**

DATE: 6-24-14

TO: Walker R48022

FROM: Grievance Officer
Western Illinois Correctional Center

SUBJECT: Staff Conduct

Date Received: 6-19-14

The attached is being returned for the reason(s) listed below:

____ Contact your Correctional Counselor

____ Use proper Committed Person's Grievance (DOC 0046)

____ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.

____ Forward grievance directly to the Administrative Review Board (protective custody, enforced medications, disciplinary reports from other facilities, decisions by the Transfer Coordinator's Office, decisions rendered by the Director).

_X_ Not **submitted** in the timeframe outlined in Department Rule 504; therefore, issue will not be addressed further. 60 day timeframe

____ Unable to determine nature of grievance/correspondence. Submit additional specific information.

____ Illegible copy submitted—submit legible copy for consideration.

____ Request restoration of GCC, segregation time cut, grade restoration to the Adjustment Committee. If request is denied, utilize the grievance process for further consideration.

____ Issue has been previously addressed on _____. No justification for further consideration.

____ Contact the Record Office with your request and/or additional information (sentence calculations, jail credits, etc.)

____ Address concerns to the Illinois Prisoner Review Board, 319 East Madison Street, Suite A, Springfield, Illinois 62706 (Executive Clemency, parole violation issues, etc.)

____ MGT/SMGT is an administrative decision; therefore, issue will not be addressed further.

____ Other _____



Exhibit H

Exhibit I

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Administrative Review Board**
**Return of Grievance or Correspondence**

4064

Offender: Walker, Tyler — R48022
Last Name — First Name — MI — ID#

Facility: WIL

☒ Grievance: Facility Grievance # (if applicable) g.o. memo 6/24/14 Dated: 6/3/14 or ☐ Correspondence: Dated: ____

Received: 7/16/14 Regarding: 4/12/14 incident, TACT Team, C/o Myers made to walk w/ exposed genitals, bleeding feet.

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.
☐ Provide dates of disciplinary reports and facility where incidents occurred.
☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL  62794-9277

**Misdirected:**
☒ Contact your correctional counselor regarding this issue. possibilities/criteria for a xfer.
☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
☐ Contact the Record Office with your request or to provide additional information.
☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
☐ Address concerns to: Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL  62706

**No further redress:**
☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.
☒ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
☐ This office previously addressed this issue on _____ Date.
☐ No justification provided for additional consideration.

**Other** (specify): This submission was filed over 60 days from 4/12/14 incident.

Completed by: Sherry Benton — S Benton — 9/17/14
Print Name — Signature — Date

Exhibit I

Distribution: Offender
Inmate Issues

Printed on Recycled Paper

DOC 0070 (Rev.4/2013)

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

14-0703

| | | |
|---|---|---|
| Date: 7-11-14 | Offender: Tyler Walker (Please Print) | ID#: R-48022 |
| Present Facility: MT Sterling C.C. | Facility where grievance issue occurred: MT. Sterling C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___/___/___  Date of Report  Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On 6-29-14 I was being moved from cell 1-C-32 to cell 1-B-69. During this time I had all of my property in the day room and C/O W. Rine was passing out medication during second shift. While he was passing by my property he saw a piece of tape on top of my T.V. he then walked over and took the tape. I asked, "are you going to take my tape?" C/O W. Rine then stated, "Its my fucking" over→

**Relief Requested:** (1) I would like C/O Rine fired because he is verbally abuseive to ▓▓▓ everyone he talks to. (2) I would like to be transfered to a prison where I can go to school.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature: [signed]   ID# R-48022   Date 7/11/14

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: 7/17/14   [x] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: C/O RINE DENIES ANY UN PROFESSIONAL ACTIONS, COMMENTS OR BEHAVIOR TOWARDS THIS RESIDENT ON THIS DAY OR ANY OTHER. XXX

Print Counselor's Name: VAN STRIEN   Counselor's Signature: [signed]   Date of Response: 8/4/14

---

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

RECEIVED AUG 6 2014 GRIEVANCE OFFICE

Chief Administrative Officer's Signature _____   Date ___/___/___

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

Exhibit J

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

tape. I said, "O.K. no problem I was just kidding," C/O W. Rine then called me a "Fucking Dumbass", and started to walk away. I then asked C/O W. Rine Did you just call me, a. "Fucking Dumb ass", C/O W. Rine turned around and walk up to me in a aggresive manner and said yeah, "you got a problem"? I said, no I just Don't appreciate you calling me a "Dumbass", because I would never do that to you. C/O Rine then said, "Whatever, get the fuck out of here." This is blatant verbal Retaliation, by trying to pick a fight with me, I don't feel safe from further retaliation and would like to be transfer to a safer institution. I don't feel like I am being reahbilitated here, I feel like I am becoming worse, from the constant cruel and unusual punishment, verbally and phsically, Inflicted by most of the staff that work here.

This will be filed when I am able to make copies for my file.

Signature
Notary Public _____


Exhibit J