E-FILED
Tuesday, 04 April, 2017 09:12:42 AM
Clerk, U.S. District Court, ILCD

United States District Court
Central District of Illinois

Tyler Walker

V.

Jeffery Korte et.al.,

Case No #

15-3318

Proposed Amended
Complaint

Jurisdiction and venue

1) This is a Civil action authorized by 42. U.S.C Section 1983 to redress the deprivation, under Color of the United States. The Court has Jurisdiction under 28. U.S.C. Section 1331 and 1343 (a) (3) plaintiff seeks daclartory relief pursuant to 28 U.S.C Section 2201 and 2202 Plaintiff claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of Civil procedure.

2) Central District of springfield Illinois is appropriate venue under 28 U.S.C Section 1391 (b) (2) because It is where the events happened.



(1)

# II

## Plaintiff

3) Tyler Walker (state I.D.#R-48022) is and was at all times mentioned herein a prisoner of W.I.C.C.

# 4)

## Defendant(s)

Defendant Jeffery Korte and Sgt. Adams were the officers in the chain of command who wittnessed and approved the actions of the tactical team.

5) Defendants K. Evens, B. Harbrich, B. Meyers, and R. Adams where all "John doe" defendants in the plaintiffs original complaint. They were members of the tactical team.

6) Defendants K. Mountain, W. Rine, Alberts, T. Dodds, "Sgt." S. Miller are all oficers at W.I.C.C. acussed of retaliation in the plaintiffs complaint.

(2)

*New*

# Defendants

7) Mark Smith, Jon Witt, David Whitford, John Peterson, Heath McDowell are all officers at Graham Correctional center who were members of the tactical team who wittnessed and failed to stop the abuse to the plaintiff

8) Mario Catarinacchia, Darryl Davenport, Garret Nickle, David O'Conner, John Sonneborn, Peter Sitch, Adam Tobin, Eric Sours, Fred Burns, Brain tate, are all officers at Jacksonville Correctional Center who were members of the tactical team whoo wittness and failed to stop the abuse to the Plaintiff.

9) Josh Durbin, Brady Zeck, Jeremiah Varble, Sean Anderson are all officers who work at Lincoln Correctional Center who wittness and failed to stop the abuse to the Plaintiff.

10) Jamie Bolyard, Doug Gellner, Ryan Marten, Romelle Lipscomb, Ron Sherrock, are all officers who work at Logan CC. and were members of the tactical team who wittness and failed to stop the abuse to the plaintiff~

(3)

# Defendants

11) Steven Ryan, Steve Fulford, Octavis Payne, Trent Karnes, Stephen Bradsaw, Roger Stirrett, Nicole Berry, Brain Moore, Rebeca Chadweell, Chris Gideon, Caleb Duckett, Jermey Haris are all officers at Taylorville Correction Center and were members of the tactical team who wittnessed and failed to stop the abose to the plaintiff.

12) Matt Beswick, Jacob Clements, Justin Dannehold, Chris Derhake, Lucaus Edgar, Josh Eichelberger, John Hamilton, Mark Harbrich, Chris Icenogle, Bryon Law, Daniel Lenning, Brant Mountain, Kyle Mountain, _____ are all officers at Western Correctional Center who were members of the tactrical team who wittnessed and failed to stop the abosed that happened to the plaintiff.

13) Each Defendant is sued individuclly and in his and her offical Capacoty. at all times mentioned in his Complaint. Each defendant acted under color of State Law.

(4)

# III.

## Facts

12) On (4-12-14) [Date] plaintiff Tyler Walker was a inmate and ward of the state at Western Illinois Correctional Center (W.I.C.C.)

13) W.I.C.C. consists of four cell houses (R1, R2, R3, R4) with four wings per cell house, a single health care unit and segregation unit for the entire institution.

14) During this time (4-12-14) [Date] plaintiff Walker was being housed in R4, A wing, cell 57. When a institutional wide "Shake-Down" was ordered for W.I.C.C. which various Correctional Center from around the state assembeled their individual tactical teams and were transported in state owned vans, to W.I.C.C. to enact this institutional "Shake-Down".

15) To enact a institutional wide "Shake-down" W.I.C.C. is placed on "lockdown" and all offenders are confined to their cells untill the entire institution is searched for contraband. The ~~████~~ I.D.O.C. tactical team then systematicly enters each wing of a given cell house, restrain each individual resident with handcuffs and escort them to a different location. Then, return to the residents cells to search for contraband.



(5)

Facts

16) During the Date of (4-12-14) There was 45
tactical team members present who witnessed and
Did not stop the excessive force Caused to the
plaintiff. [see exhibit (A)]

17) On (4-12-14) plaintiff Walker was Complying with the ~~institutional~~
institutional "shake-down" when the I.D.O.C tactical
team Known as "orange crush" arrived at R4.

18) Brandon Meyers arrived at plaintiff Walkers Cell, ordered
walker and his Cellmate Jimmie Mandoza to grab their
state "blues and shoes" and begin stripping for inspection.

19) While plaintiff Walker was Complying with these orders at
the front of the Cell Mandoza, Walker Cellmate was
getting his state blues ready for inspection at the
back of the Cell under the supervision and Control
of B. Myers.

20) During this time another tactical team member was
standing behind B. Meyers and ordered Mandoza to stop
what he was doing and face the back of the Cell.

21) Almost immediately and without a opportunity to
respond and only given one direct order several
tactical team members enter the Cell to engage
Mandoza [see exhibit (B)]

(6)

# Facts

22) Since plaintiff Walker was Complying, he was placed with his head down next to the toilet and told to be Calm and stay compliant and he wouldn't go to Seg.

23) This was done while Walker was Complying with a strip Search As a result Walker was only wearing one Shoe.

24) Walker was then placed in wrist restraints by defendants K. Evans and B. Harbrich and aggressively pulled from his Cell without reason.

25) Once outside of R4 housing unit, still in wrist restraints and Complying K. Evans and B. Harbrich ripped walkers pants and underwear off ~~cuff~~ and his remaining shoe.

26) The plaintiff now has no pants or boxers and no Shoes on.

27) Walker began pleading to the defendants K. Evans and B. Harbrich asking them why were they doing this, and stating he had done nothing wrong.

28) Defendants K. Evans and B. Harbrich began laughing in a sadistic manner and told Walker to "Shut his naked ass up" and threatened to spray him with mace.

(7)

# Facts

29) K. Evans and B. Harbick then forcefully bent Walker over at the waist, forcing his head between his legs and abusively pulling his handcuffed arms behind his back toward the sky.

30) While still in this position, K. Evans and B. Harbick then forcefully and aggressively began to walk plaintiff Walker to segregation alternating walking him backwards and forwards for short intervals of distance.

31) As a result of being forcefully and aggressively walked in this postison walker was unable to keep pace with K. Evans and B. Harbick and repeatedly fell to the ground.

32) Every time walker would fall to the ground, K. Evans and B. Harbick would abusively drag walker, naked, down the cement walkway tearing the skin off the tops and bottoms of his feet and ankels, exposing the raw flesh to an acute infectious disease that is often fatal, caused by a specific toxin of bacillus called (Colstirium tetani) this required walker to be administered a tetanus shot. (see Exhibit C)



33) Walker was subjected to this unnecessary malicious abuse across the entire compound while restrained and naked. Upon information and belief, this distance was over a quarter mile.

(8)

# Facts

34

During this time of abuse, John Doe #5 was standing outside of the gym about half the distance from RH to segregation. Defendant John Doe #5 stepped in front of walker and started walking backwards while digging his fingers into the preasure points behind walkers ears. Upon information and belief Cameras mounted to academic and administration building that are recording 24 hours a day 7 days a week will show these facts as true.

35

Plaintiff Walker began pleading and crying out to please stop and that he was bleeding and in severe pain, to all three defendants K. Evans, B. Harbick, and John Doe #5.

36

John Doe #5 then took out his mace and began to shake it and told walker, "to shut his mouth or he was going to get sprayed with mace."

37

Realizing that his pleading was going to cause him more pain and suffering walker complied, so he would not be maced while in restraints. John Doe #5 participated in this unnecessary force for a few hundred feet while K. Evans and B. Harbick finished dragging walker naked and still in restraints the rest of the way to segregation.

(9)

# III.

## Facts

38) Once in segregation nurse steel was dispatched to treat Walkers injuries. Nurse steel viewed the extent of the plaintiffs Injuries and found the injuries grievous enough to transfer the plaintiff to the health care unit. While in health care walkers injuries were cleaned and bandaged to stop the bleeding and he recieved a tetanus shot. (See Exhibit C) While being treated, nurse steel asked walker, "if he was the inmate that was being drug without pants on." Walker said, "yes, and explained that he didn't do anything to deserve it and that he had told the officers they were hurting him.

39) The plaintiffs injuries had to be cleaned, bandaged, and checked for infection for 2 weeks after the initional injury, but it was only documented once in his medical file. upon information and belief, movement records will show that walker was taken to health care several times shortly after (4-12-14).

40) While in segregation walker en countered numerous other inmates from W.I.C.C. that had been abused and physically injuried by the "orange crush" tactical team during their week long shake down of W.I.C.C.

(10)

# Facts

41) Defendant Korte and Sgt. Robert Adams were present and approved the tactical cell extraction of the plaintiff. ~~now~~ see exhibit (A) and A: 1-3

42) It has been determined that They also witnessed The abuse to the plaintiff and failed to stop The officers actions.

43) As a result of the events of Physical abuse and Subjection to a lethal bacillus and the cruel and unusual punishment of being drug naked in view of female Staff. The plaintiff has experienced Severe anxiety, anger, and stress that he has to be administed "prozac" and "remron" which are both anti-anxiety and anti-depression medication.

44) He also has to see a clinical psychiatrist every couple of weeks to help stabilize his severely damaged mental state.

45) Walker has also been Subjected to several accounts of retaliation aginst him since reporting the events referred to in this complaint.

46) These defendants are W. Rine, Albert, T. Dodds, K. Mountain, See [ Exhibits J-O of original complaint ~~Through reference in this complaint~~ ]

(11)

# Facts

47) These events led to defendant Sgt. Miller, to make false accusations of staff assault (later found untrue) that caused plaintiff Walker to attempt to take his own life by attempting suicide because of the constant harrasment and subjection to this cruel and unusual punishment on a daily basis.

48) All of those dates on the grievances will show the progression of retaliation and false disciplinary accusations. Mental health records will also correspond with these dates that led to the plaintiffs attempt on his ~~own~~ own life.

49) Upon information and belief, video tapes from the cell houses and dinning hall during the times of these events will corroborate the facts stated in the grievances and prove the false accusations of staff assault.

# Exhaustion of Remedies

50

(48) Plaintiff Walker used the grievance procedure, as outlined in the inmate orientation manual. while in segregation to report the abuse that occured on (4-12-14) but the grievance was never responded to. (See exhibit D)

51

(49) After allowing defendant Tara Goins adequate opportunity to respond to the plaintiffs grievance as well as numerous written requests asking for a response to said grievance, plaintiff Walker requested the assistance of social worker Debbie Webb who submitted an additional grievance reporting abuse to the plaintiff. Debbie Webb filed this grievance on 5-28-14. (See Exhibit E) This grievance also wasn't responded to.

52

(50) Walker also submitted a copy of this grievance on 6-3-14 when he was in RI, (see Exhibit F) This grievance was deined claiming that it did not meet the 60 day deadline because she didn't recieve the grievance until 6-19-14. when the rules clearly state it is when a offender submits a grievance not when the grievance officer receives the grievance. and the dates of submittion are clearly before the 60 day deadline.

53

(51) Walker recieved this response on 6-24-14 and sent his appeal to the administrative review board. The review board also deined Walker's grievance for these reasons (see Exhibit G)

(13)

IV

# Exhaustion of Remedies

54

54) Upon information and belief, Since Defendant Goins has been in her place of authority at W.I.C.C. it will be proven that defendant Goins has Violated procedures for post deprivation remedies on several occations to keep inmates from Exhausting their remedies which are required to take action for Violations to their Constitutional rights.

55

55) Due to several attempts to exhaust administrative remedies, including haveing another state employee file his grievance for him. Plaintiff Walker feels he has exhausted his remedies to the best of his abilities.

(14)

# Causes of Action
## Count I

56) Plaintiff reallege and incorporate by reference paragraphs (1-55)

57) Defendants K. Evans and B. Harbrich violate the plaintiffs **Eighth Amendment** rights by using ecessive force aginst plaintiff walker by dragging the plaintiff while he was restrained and naked for a significant distance, subjecting him to a fatal infectious bacillus and causing physical injury by tearing the skin off the plaintiffs feet and ankels exposing raw flesh and maliciously and sadicticly laughing and ripping the clothes of the plaintiffs person without a legitimate security reason.

## Count II

58) B Plaintiff reallege and incorporate by reference paragraphs (1-54)

59) Defendants K. Evans and B. Harbrich violated Plaintiff walkers **Fourth Amendment** right by stripping the clothes off the plaintiffs person without a legitimate security need in a unsanitary enviroment in a humiliating and degradeing manner by forcing the plaintiff to display his genitals outside the privicy of his cell on the walkway in veiw of female staff. The defendants actions caused and continues to cause the plaintiff pain, suffering, physical injury and emotional distress.

(15)

# Causes of Action

## Count.V.

(¶0) Plaintiff reallege and incorporate by reference paragraphs (1-55)

(¶1) Defendants %o Mountain, %o Rine, %o Albert, Sgt. Miller, and food supervisor Dodds each violate the plaintiffs **First Amendment** right by "Campaign of harassment" by retaliating aginst the plaintiff in the time directly following the plaintiffs grievance for post deprivation remedies for the violations to his eighth amendment right to be free from cruel and unusual punishment. Which caused the plaintiff Pain, Suffering, Physical injury and emotional distress that is being adressed in this complaint.

## Count.VI.

(¶2) Plaintiff reallege and incorporate by reference paragraphs (1-54)

(¶3) Defendants %o Mountain, %o Rine, %o Albert, Sgt. Miller, and food supervisor Dodds each violate tho plaintiffs **Fourteenth Amendment** Due process right by violating the Plaintiffs Constitutionaly protected first amendment to access the Court, by Causing the plaintiff significant hardship in relation to ordinary incidents of prison life by "Campaign of harassment" in order to keep the plaintiff from takeing Civil action and attempting to access the Court for a violation to his Eighth Amendment right that is being addressed in this Complaint that Caused and Continues to Cause the plaintiff Pain, Suffering, physical injury and emotional distress.

(Ntil) 16

# Causes of Action
## Count. VII

1-55

64
(63) Plaintiff realledge and incorporate by reference paragraphs (1-54)

65
(64) Defendant Korte violated the plaintiffs **Eighth Amendment** by acting deliberately indifferent and not enforcing the I.D.O.C.'s administrative directive, on video tapeing tactical procedures. which were created because of previous problems with tactical team members following those directives and causing physical injury to inmates who they were restraining with excessive force.

66
(65) Defendant Korte was also deliberately indifferent to several grievances and physical injuries that were caused to numerous offenders before the violations that were committed aginst plaintiff Walker. And chose not to remedy the situation which caused the plaintiff pain, suffering physical injury and emotional distress.

17



V.

## Causes of Action
### Count. VIII

67
(W) Plaintiff reallege and incorporate by reference Paragraphs (1-54) 1-55

68
(W) Deffendant ~~John Doe~~ Sgt. Adams violated the plaintiffs **Eighth Amendment** by acting deliberately indifferent and not training tactical team members he was responsible for on the proper procedures of transporting a inmate while restrained that caused the plaintiff Physical injury.

69
(W) Deffendant ~~John Doe~~ Sgt. Adams also violated the plaintiffs Eighth amendment by acting deliberately indifferent by being present during and not enforcing administrative directives on video tapeing tactical procedures which were created because of previous problems with tactical team members following these directives and causing physical injury by using excessive force.



18

Cause of Action

70) Plaintiff reallege and incorporate by reference
    Paragraphs (1-55)


71) All 42 New defendants violated the plaintiffs
    Eight Amend by acting deliberatly
    indifferent and not stoping Defendants from
    Causing the plaintiff bodily harm.


(19)

Verification

I Declare under penalty of Perjury that the foregoing is true and correct.

Date: 4-4-17

Tyler Walker

20

Exhibits

## Facility: Western Correctional Center
**\*\*Limited Distribution\*\***

Date: 04/09/2014

Time: 7:30 a.m.

Members: Western C.C. Tactical Unit/ Central Region Tactical teams/ Western C.C. Internal Affairs and Intelligence Unit

Purpose: Unannounced Shakedown

Target Area: R-1 A-wing and B-wing, other wings possible with time permitting

Duties: The inmates from R-1 Housing Unit will be strip searched, restrained behind the back, and escorted to the gym by Tactical Staff & then possibly interviewed by Intel/I.A. Staff.

Narcotics: In the event narcotics are found in the cell or person, suspected suspicion, or the use of narcotics by an inmate is determined the inmate(s) may be subjected to random drug screening and interviews which will be completed at a determined location by Intel Staff.

Weapons: In the event weapons are found in the cell or on their person, inmate will be interviewed by Intel Staff & then escorted to segregation for possible authorization of immediate transfer.

Staging Area: Tactical Units will report to ███████████████████████████ for a brief of the operation.

Command Staff:
- Chief of Operations Joseph Yurkovich
- Deputy Chief Mike Atchison
- Central Region Deputy Director Glen Austin

Operations Chain of Command:
- Warden Jeff Korte
- Assistant Warden of Operations Rick Orr
- Assistan Warden of Programs Forest Ashby
- Sgt. Robert Adams Tactical Response Team

Exhibit

A

Tactical Unit Personnel:

| | |
|---|---|
| Western C.C. | 15 |
| Jacksonville C.C. | 10 |
| Taylorville C.C. | 10 |
| Lincoln C.C. | 5 |

Graham C.C.                                    5

Total Number of Tactical /T.R.T. Personnel Assigned: 45

Notes: In the event drug tests are utilized they will be provided by Western C.C. Intel Staff.

Objectives: Western C.C. will already be placed on a Level 4 Lockdown at 7:00am. Upon arrival to the facility, The Tactical Unit and support staff, under the direction of the Operations Commander will report to the Western C.C. gym for briefing & distribution of the Operations Plan. Operations objectives: Conduct a strip search of each inmate at the cell. Place each inmate hands behind the back, placing them directly outside of their cells. Once strip searches and cuffing are completed, the inmates will be lined up and escorted as groups to the Gym. Movement to and from the cell houses will be accomplished through mass line movement under the supervision of the Tactical Unit. The inmates will be seated in the Gym and covered by a Tactical Unit Member awaiting interviews by the Intel Unit Staff. Immediately after the inmates have been removed from the cell houses, the tactical units will conduct a thorough shakedown of all cells. Once the galleries have been completely searched, inmates will return to their cells by way of tactical escort, securing all galleries.

Immediate Transfers:

Will be provided by Chain of Command

Operation Specifics
Staff Expectations: Staff safety and professionalism, clear and concise documentation, Utilization of the Chain of Command will be adhered.

Inmate Issues: If any inmate issue (medical, disciplinary, etc.) arise during the course of the operation, chain of command will be advised immediately. The Operation Commander will determine segregation placement, unless otherwise directed; calculated use of force situations (cell extractions) will be handled by the Western C.C. Tactical Commander. All documentation required will be forwarded to the necessary personnel designated by the Operations Commander.

Exhibit A

# DECLARATION

Exhibit B

Pursuant to 28 U.S.C. 1746 I Declare the aftermentions are true $ factual:

I Jimmie Mandoza B-76378, was incarcerated at Western Illinois Correction Center, on April 12, 2014

During this time "orange crush" tactical team held a Institutional Shake Down. In which they came to our Cell and I was given one direct order to turn and face the back wall of the Cell, while my Cellmate Tyler Walker R-48022 was being stripped searched at the front of the Cell, Then before I had time to respond The tactical team entered the cell claiming I wasn't complying with the direct order. During this time my cellmate Tyler Walker R-48022 was also placed in restraints without being given any direct orders at all. Then we were both Drug from the cell to seg. During this time my cellmate recieved injuries to his feet from being Drug. by the officers.

Exhibit B OVER

Signed: _Mendoza B76375_

Date: 7-3-14

2500 Rt. 99 S
MT. Sterling, IL
62353

Pursuant to 28 U.SC. 1746, I Declare
under penalty of perjury the enclosed
mentioned is true & factual. I was not
bribed, forced, threatened, or paid to make
this Declaration. If called, I will
testify, and state the same.

Exhibit B

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____ **Western Illinois Correctional** _____ Center

| Offender Information: | | |
|---|---|---|
| Walker | Tyler | ID#: 1248022 |
| Last Name | First Name | MI |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/12/14 | **Nurse / CMT TX Protocol: Abrasions** | MD/PA/NP REFERRRAL IF: |
| S. 8A | - What caused the injury (accidental, work related, assault, self-inflicted)? during Leg Walk. | P. – Wounds with ground-in debris or needing irrigation |
| | - Where did it happen? on the walk. | - Uncontrolled bleeding |
| | - What time did it happen? 730–8A | - Those over joints or covering a large and/or deep area |
| | - Do you have a medical condition or are you taking any medication ∅ that would cause excessive bleeding or problems healing? | - Assault wounds to head, face, chest, back or abdomen |
| | - Do you have any allergies to medication? NKA. | - When exchange of body fluids may have occurred |
| | - When was your last tetanus? Unknown. (R) delltoid | - Laceration of eyelids, lips, ears or over joints/fingers |
| | | - Sustained in risk setting (barn, toilet, near sewage, etc.) |
| O. | T P R    B/P 124/86  Wt. 235 98⁷·86·16 | - Wounds not responding to protocol treatment |
| | - Characteristic and severity of pain 7/10 – | - If injury is self-inflicted, refer to Mental Health |
| | - Size and depth of injury ① great toe bil heels c superficial abrasions. | dress∆ daily until healed. |
| | - Presence of contaminates or ground-in debris ∅ | **Nursing Intervention:** (verify medications and allergies prior to treatment) |
| | - Bleeding or drainage; note amount and characteristics superficial – dead skin unrolled. | 1. Cleanse with antiseptic soap ✓ 2. Apply direct pressure to wound and sterile compress if needed to control bleeding – elevate if possible ✓ |
| | - Swelling, edema and/or any disfigurement | 3. Acetaminophen 325 mg, 1 – 2 tablets t.i.d. PRN X 3 days 4. Dress abrasion as necessary ✓ |
| | - Tetanus toxoid status given. | 5. Complete injury report |
| | - Signs and symptoms of impaired circulation ∅ | 6. If there is any break in the skin and the patient is not allergic to tetanus toxoid; give 0.5 cc tetanus-diptheria toxoid IM if none in past ten years (R) delltoid |

_Printed on Recycled Paper_



Exhibit C

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

# DECLARATION

Pursuant to 28 U.S.C. 1746 I Declare the following statement is True and factual:

I Anthony Ritter, Was incarcerated at Western Illinois Correctional Center on 4-20-14 Date, when I was celled with inmate Tyler Walker in segregation after he was physicaly abused by the "orange crush" tactical team, and he had to be taken to health care several times to have his injuries treated for infection. I also wittnessed inmate Walker file a grievance over what was done to him and not be given a response to those issues.

Also, The same officer that abused inmate Walker came to our cell during the orange crush shake down and distroyed several personal hygene items of mine and inmate Walker's during this time.

— Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the enclosed statement is true and factual. I was not bribed, forced, threatened, or paid to make this Declaration. If Called I will testify, and state the same.

Signed: Anthony M Ritter  R-23620

Date: 5-20-16

Exhibit
D

Exhibit

## ILLINOIS DEPARTMENT OF CORRECTIONS
### MENTAL HEALTH PROGRESS NOTE

Offender Name: Walker, Tyler (Last, First, MI)  ID#: R48022  DOB: 5/23/84

S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan

Session Date/Time: 5/28/14 9:10a  Session Duration: 30 minutes

| Appearance: | ☑ Appropriate | ☐ Inappropriate | Concentration: | ☑ Appropriate | ☐ Inappropriate |
| Behavior: | ☑ Appropriate | ☐ Inappropriate | Memory: | ☑ Appropriate | ☐ Inappropriate |
| Mood: | ☑ Appropriate | ☐ Inappropriate | Speech: | ☑ Appropriate | ☐ Inappropriate |
| Affect: | ☑ Appropriate | ☐ Inappropriate | Thoughts: | ☑ Appropriate | ☐ Inappropriate |

**Subjective, Objective, Assessment**

The consumer is being seen
at his request. He states he
continues to have a lot of
anxiety. He states that he
constantly thinks about what
happened to him during the
lockdown. He states that the
whole experience but it became
a road block. "I'm with another
one". He elaborated his anxiety
and how he feels during
through his treatment by
the TAP team. We also
thought stopping with
him. Suggested that he
may want to attend
an anxiety reduction
group. "I will think about
it." He reports no problems
with cellie. Return 5/4

**Axis I** Anxiety NOS
TCI MSD

**Axis II**

**Axis III**

**Axis IV**

**Axis V**

**MH Acuity Level:**

**Plan:**
☐ Informed of crisis team and MHP request process
☐ Follow Up with MHP duration: PRN
☐ Refer to Psychiatry
☐ Return to psychiatry per provider orders
☐ Refer to Group:
☑ Encouraged to use techniques/coping skills developed
☐ Refer to Clinical Services
☐ Refer to Internal Affairs/Intelligence
☐ Encouraged to sign up for Nurse Sick Call

Writer mailed the grievance
to the Warden's office through
inner office mail.

Clinician Name (Print): Debbie Webb, LCSW

Facility: Western Illinois Correctional Center

Signature: _____

Title: Clinical Social Worker

Distribution:    Offender Medical File

Printed on Recycled Paper

Exhibit E

| Date: 6-3-14 | Offender: (Please Print) Tyler Walker | ID#: R-48022 |
|---|---|---|

| Present Facility: Mt. Sterling C.C. | Facility where grievance issue occurred: Mt. Sterling C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify) _____

- [ ] Disciplinary Report: _____
  Date of Report _____  Facility where issued _____

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): On 4-12-14 I was in Mount Sterling C.C 4-4-57. when 4o myers' Doc 0317 from lincon C.C and the "orange crush" tactical team came to my cell. 4o myers' told me and my cellmate Jimmie Mandoza to grab our state blues and our shoes. while we were doing this another "orange crush" tactical officer told my cellmate Jimmie Mandoza to face the back wall. Then without giving my cell mate time to respond to the first direct order They entered the cell to get my cellmate. I was then placed with my head down next to the toilet and told to stay down. I did this with no problem.   over ⟶

**Relief Requested:** ① I would like to be transfered to a safer institution where I can go to school and better myself ② I would like 4o myer fired. ③ And I would like to be compensated for my physical and Mental abuse.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature _____ ID# R-48022  Date 6, 3, 14

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: 6, 19, 14

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name _____  Counselor's Signature _____  Date of Response _____

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?

- [ ] Yes: expedite emergency grievance
- [ ] No: an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____  Date _____

Distribution: Master File, Offender                    Page 1                    DOC 0046 (8/2012)

Exhibit F

I was then placed in handcuffs and pulled from the cell with no shoes and my pants unbuttoned. C/o myer and another unknown officer then proceeded to drag me to seg. once outside the cellhouse C/o myer pulls my pants the rest of the way off. This causes my boxers to drop around my ankels. [This should all be on the video tape from the cell house and on the walk] I was then forced to walk with my head between my legs, with no pants on and my genitels showing to all of the female staff in health care and any inmate who was looking out of his window at the time. This whole time C/o myer and the other unknown officer were laughing the whole time like it was all a game. Once I was in seg I realized that I was bleeding from both of my feet from being drug with no shoes on. So a nurse was called, while I was waiting C/o Mountain, who was also on the "orange crush" tactical team was coming into seg. I explained to C/o Mountain what happened and told him I wasn't the person being non-complyiant. he left and told me he would find what happened. A couple of minutes later seg recieved a call And I was told I was going back to the unit. Also Every officer who was working seg. the Morning of 4-12-14 knows that this is the truth. I was then escorted to health care to receive treatment for my bleeding feet. I then recieved a Tetanus shot and my feet where banaged, [This had to be done for the next 4-5 day but was only documented once] But while I was receiving treatment on 4-12-14 C/o Mountain came to health care to bring me my pants that were torn off outside 4 house and to tell me I was going back to the unit with him. But before I was finished receiving treatment C/o Mountain recieved phone call. After the call he started to leave and I asked, "if I was going with him still" and he said, "it wouldn't look good". I was then escorted back to seg. because it wouldn't look good not because I broke the rules. [Agin all of the nurse, officers and the video tapes from health care and on the walk should back up my story] This is the Third Grievance I've wrote on this matter and I still haven't herd nothing back. Can you please help me. I have been physicly abused and mentally humiliated. My 8th amendment rights have been violated and I don't feel safe at this Institution. I'm supposed to be rehabilitating my life, but I feel I am becomeing worse because of the constant harassment. I don't bother staff or write grievances, but this crossed the line.

Exhibit F

Exhibit G

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

Offender: _Walker_ _Tyler_ _____ _R48022_
             Last Name        First Name        MI        ID#

Facility: _WIL_

☒ Grievance: Facility Grievance # (if applicable) _g.o. memo 6/24/14_ Dated: _6/3/14_  or ☐ Correspondence: Dated: _____

Received: _7/16/14_ Regarding: _4/12/14 incident, TACT Team, C/o Myers made to walk w/ exposed genitals, bleeding feet._
             Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:  Administrative Review Board
                                 Office of Inmate Issues
                                 1301 Concordia Court
                                 Springfield, IL  62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue. _possibilities/criteria for a xfer._

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
                         319 E. Madison St., Suite A
                         Springfield, IL  62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
                                                    Date

☐ No justification provided for additional consideration.

---

Other (specify): _This submission was filed over 60-days from 4/12/14 incident._

Completed by: _Sherry Benton_ _SBenta_ _9/17/14_
                 Print Name              Signature              Date

## Department of Corrections
### ADMINISTRATIVE DIRECTIVE

| | Number | 05.01.173 |
|---|---|---|
| | Page | 1 of 6 |
| | Effective | 5/1/2009 |

| Section | 05 | Operations |
|---|---|---|
| Subsection | 01 | Security |
| Subject | 173 | Calculated Use of Force Cell Extractions |

I. **POLICY**

A. **Authority**

20 Ill. Adm. Code 501

730 ILCS 5/5-8-4

B. **Policy Statement**

In accordance with Department Rule 501, the Department authorizes the use of force to extract an offender from a cell only as a last resort or when other means are unavailable or inadequate and only to the degree reasonably necessary to control the situation.

II. **PROCEDURE**

A. **Purpose**

The purpose of this directive is to standardize the equipment and the procedure for calculated use of force cell extractions. These procedures are not applicable in situations that require an immediate use of force.

B. **Applicability**

This directive is applicable to all facilities within the Department.

C. **Internal Audits**

An internal audit of this directive shall be conducted at least semi-annually.

D. **Designees**

Unless specifically stated otherwise, individuals specified in this directive may not delegate stated responsibilities to another person.

E. **Definitions**

1. Force - physical contact used to coerce or prevent some action on the part of an offender; Force may include the use of chemical agents.

2. Calculated use of force cell extraction - movement of an offender from a cell to another location by the Tactical Team.

---

### ADMINISTRATIVE DIRECTIVE

Illinois Department of Corrections

| Effective | Page | Number |
|---|---|---|
| 5/1/2009 | 2 of 6 | 05.01.173 |

3. Video tape - any visual recording media.

F. **General Provisions**

1. Use of force shall be terminated as soon as the need for force is no longer necessary.

2. Nothing in this directive shall preclude staff from immediately using force or applying restraints when an offender's behavior constitutes a threat to self, others, property, or the safety and security of the facility.

3. Restraints shall be applied in accordance with Administrative Directive 04.04.103 or 05.01.120 as appropriate.

4. Failure by the offender to comply with the orders to locate is considered a threat to self, others, and the safety and security of the institution and may result in the use of chemical agents in accordance with Department Rule 501.70.

5. Unless it is not practical or safe, cell extractions shall be video recorded from the time circumstances warrant a cell extraction until the offender is placed in the designated cell.

NOTE: Any interruption in recording, including but not limited to changing a video tape or battery shall orally be documented on the video tape.

6. Use of force cell extractions shall be performed by certified Tactical Team members as designated by the Tactical Team Commander. The Tactical Team Commander shall designate one or more members who may function as the Tactical Team Leader.

G. **Equipment**

1. The following equipment items shall be available to and used by Tactical Team members when conducting a calculated use of force cell extraction:

a. Orange jump suit;

b. Protective helmets and full face shields;

c. Knife resistant vests;

d. Protective gloves;

e. Restraints minimally including hand cuffs and leg irons;

f. Protective convex shields;

g. Batons (36 inch length by 1.5 inches in diameter of oak or hickory);

h. Gas masks;

i. Leather boots, purchased by the employee, a minimum of 8 inches high for ankle protection; and



Exhibit B

2. Video camera with a minimum of two batteries and a video tape.

3. Chemical agents shall be available and may be used in accordance Department Rule 501.70.

The following equipment items may be used by Tactical Cell Team members when conducting a calculated use of force cell extraction.

a. Throat protectors (cut resistant); and

b. Elbow, groin, knee, and shin protectors.

H. Tactical Team Structure for Calculated Use of Force Cell Extractions

The Tactical Team shall consist of six certified Tactical Team members for a single offender cell extraction and seven certified Tactical Team members for a multiple offender cell extraction. One member of the Tactical team as the Tactical Team Leader; however, the team leader shall not be the person responsible for video recording the incident.

1. For a single offender cell extraction, the Tactical Team Commander shall designate members who shall be responsible for following functions.

a. The shield person (also known as Number 1 person) shall use a shield and be the first member to enter the cell, secure the offender against the wall, bed, or floor; secure the offender's head and upper body; and orally communicate with the offender.

b. Two members (also known as Number 2 and 3 persons) shall secure the offender's arms and hands and place restraints on the offender's wrists and ankles.

c. A member (also known as Number 4 person) shall secure the doorway with a baton to prevent the offender from escaping, and if necessary, to assist in the application of restraints.

d. A member (also known as Number 5 person) shall provide direct orders to the offender prior to the extraction, open the cell door to initiate the extraction, remain outside the cell with a baton in the event the offender should attempt to escape from the cell, and deploy chemical agents if necessary.

e. The video recording member (also known as Number 6 person) shall remain outside of the cell and video record the extraction including but not limited to: the orders to vacate the cell, the notification that failure to comply constitutes a threat to self, others, and the safety and security of the institution, removal of the offender from the cell, escorting the offender for and treatment of medical care; and placement of the offender at a designated area.

2. For a multiple offender cell extraction, the Tactical Team Commander shall designate members who shall be responsible for following functions.

a. The shield person (also known as Number 1 person) shall use a shield and be the first member to enter the cell, secure the first offender encountered against the wall, bed, or floor; secure the offender's head and upper body, and orally communicate with the offender.

b. The assistant shield person (also known as Number 2 person) shall use a shield to secure the second offender encountered against the wall, bed, or floor; secure the offender's head and upper body; and orally communicate with the offender.

c. A member (also known as Number 3 person) shall provide immediate back-up to the team member in most need of assistance by securing the offender's arms and hands and placing restraints on the offender's wrists and ankles.

d. A member (also known as Number 4 person) shall provide immediate back-up to the team member with the other offender by securing the offender's arms and hands and placing restraints on the offender's wrists and ankles.

e. A member (also known as Number 5 person) shall provide immediate back-up to the team members with the most combative offender by securing the offender's arms and hands for placement of restraints.

f. A member (also known as Number 6 person) shall provide direct orders to the offender prior to the extraction, open the cell door to initiate the extraction, secure the doorway with a baton to prevent an offender from escaping, and if necessary, deploy chemical agents and assist in the application of restraints.

g. The video recording member (also known as Number 7 person) shall remain outside of the cell and video record the extraction including but not limited to: the warnings to the offender prior to the use of force, the issuance of three direct orders to vacate the cell, the notification that failure to comply constitutes a threat to self, others, and the safety and security of the institution, removal of the offender from the cell, escorting the offender for and treatment of medical care; and placement of the offender in a designated area.

I. Calculated Use of Force Cell Extraction Procedures

1. Once an officer has ordered an offender to move from the cell and the offender refuses, the officer shall report the refusal through the chain of command.

2. The Lieutenant or above shall again order the offender to vacate the cell. If the offender refuses, the Lieutenant or above shall report the refusal through the chain of command.

3. On site personnel shall begin video recording the offender's actions.

4. When time and circumstances permit, the Shift Commander shall obtain the approval of the Chief Administrative Officer for calculated use of force cell extractions. In all other situations, the Shift Commander or above shall approve the cell extraction.

5. If the decision is made to proceed with a cell extraction, the Shift Commander shall activate the Tactical Team.

Exhibit A



## ADMINISTRATIVE DIRECTIVE

**Illinois Department of Corrections**

| | | | |
|---|---|---|---|
| Effective | Page | Number |
| 5/1/2009 | 6 of 6 | 05.01.173 |

b. If available, activate any security measures such as breaking the security tab on the VHS (Video Home System) video tape to prevent the video tape from being erased or recorded over.

c. Tag the video tape as evidence and process it in accordance with Administrative Directive 01.12.112.

13. Unless otherwise directed to maintain longer, the video tape shall be retained in a secure area designated by the Chief Administrative Officer for three years following the date of the extraction.

14. Each employee who participated in the cell extraction or who was otherwise involved shall complete an Incident Report and other appropriate reports documenting his or her entry. When necessary, the incident shall be reported in accordance with Administrative Directive 01.12.105.

15. The Shift Commander shall ensure:

   a. A search of the involved area is completed after removal of the offender;

   b. The area is decontaminated if chemical agents were used; and

   c. Appropriate reports are compiled and processed.

16. The Shift Commander or above shall debrief with the Tactical Team.

Authorized by:

Roger E. Walker Jr.
Director

Signatures:
05.01.173        AD
And as amended 9/11/1999 and 8/1/2001        8/1/1999

---

## ADMINISTRATIVE DIRECTIVE

| | | | |
|---|---|---|---|
| Effective | Page | Number |
| 5/1/2009 | 5 of 6 | 05.01.173 |

6. The Zone Lieutenant or above shall:

   a. Secure the area by removing all non-involved staff and non-secured offenders;

   b. Ensure the video camera is present and recording the offender's actions; and

   c. Notify medical staff of the pending cell extraction.

7. Upon notification of a pending cell extraction, Health Care staff shall check the offender's medical file for pertinent medical information and be present in a secure area that is close to, but not in the immediate vicinity of the cell extraction.

8. Upon arrival of the Tactical Team, the Zone Lieutenant or above shall:

   a. Brief the Tactical Commander of pertinent information;

   b. Ensure the transfer of the video tape to a designated Tactical Team member to continue recording;

   c. Notify the Duty Administrative Officer of the incident, pending cell extraction, and other information as it becomes available; and

   d. Be available, if needed, but remain out of the immediate area of the cell extraction.

9. Prior to the use of force, the Tactical Team leader shall:

   a. Orally attempt to obtain the offender's voluntary compliance to vacate the cell or area prior to the use of force. In cells or areas with two or more offenders, each offender shall be given the opportunity to comply and be voluntarily removed. Whenever possible, offenders who comply shall be voluntarily removed prior to action being taken;

   b. Issue three direct orders for the offender to comply;

   c. Advise the offender that failure to comply may result in the use of chemical agents.

10. If the offender does not vacate the cell voluntarily, the Tactical Team shall remove the offender from the cell.

11. Following removal from the cell, the Tactical Team shall escort the offender to a designated area to be examined by Health Care staff.

12. Following the completion of the cell extraction including medical care, the Tactical Team member who video recorded the incident shall:

   a. Label the video tape with the date and location of the incident, offender name(s) and number(s), and the name of the employee who recorded the incident.