IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TYLER WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 15-3318 |
| | ) | |
| JEFFERY KORTE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF KENNETH EVANS

I, Kenneth Evans, pursuant to 28 U.S.C. 1746(2), state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. In April of 2014, I was a member of Western Illinois Correctional Center's ("WICC") tactical team.

2. On April 12, 2014, I participated with the statewide team in a facility-wide shakedown of WICC.

3. On the morning of April 12, 2014, Blake Haubrich and I were assigned to the "escort team."

4. Our instructions were that if any inmate was brought down to us from a cell, we were to immediately escort him to segregation and then return to the housing unit.

5. Haubrich and I did not extract Tyler Walker ("Plaintiff") from his cell on April 12, 2014.

6. I believe Haubrich and I were standing near the main door of A wing when an extraction team brought Plaintiff to us.

7. We were not told and did not know what Plaintiff had done to be put in segregation.

8. As we escorted Plaintiff through the foyer of the R4 housing unit, Plaintiff's pants fell down at least twice.

9. We stopped, and I pulled Plaintiff's pants up and placed the waistband in his hand so he could hold his pants up.

10. As we exited the housing unit, Plaintiff began passively resisting us by crying, dropping to his knees, and stating, "this is wrong," "I didn't do anything, it was all my cellie."

11. At that time, both for Plaintiff's safety and ours, we turned Plaintiff around and began escorting him backwards and bent over at the waist.

12. This is a technique that puts the inmate in a better position for the officers to have control of him.

13. As we were escorting Plaintiff, his pants came down again, and he stepped out of his pants and shoes.

14. Haubrich and I felt that for safety reasons we should get Plaintiff to segregation as quickly as possible.

15. Another TACT officer was behind us and picked up Plaintiff's clothes and followed us to segregation.

16. Several times during the escort to segregation, Plaintiff would drop to his knees and not stand up and walk, but at no time did we drag or carry him.

17. When Plaintiff would drop to his knees to rest, Haubrich and I would give him ample time to catch his breath, and then we would stand him back up and continue to segregation.

18. Once we arrived at segregation we placed Plaintiff in the holding cell and returned to the R4 housing unit.

19. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 9/ 13 /2018

Kenneth Evans

Kenneth Evans