E-FILED
Wednesday, 13 March, 2019 11:09:16 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TYLER WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No.: 15-cv-3318-SLD** |
| | ) | |
| **JEFFERY KORTE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Plaintiff, proceeding *pro se*, filed an amended complaint alleging excessive force, retaliation, an unconstitutional strip search, and failure to intervene at the Western Illinois Correctional Center ("Western"). Defendants Jeffery Korte, Kenneth Evens, Blake Habrich, Kyle Mountain, Will Rine, Steven Albert, John Miller, Terry Dodds, Brandon Myers, and Robert Adams have filed a Motion for Summary Judgment [ECF 112] to which Plaintiff has filed a response. For the reasons indicated herein, Defendants' Motion is GRANTED in part and DENIED in part.

**FACTS**

Plaintiff filed an amended complaint, alleging that on April 12, 2014, an Orange Crush tactical team arrived at Western for a shakedown of the institution. Plaintiff claims Defendants Myers, Evens and Habrich, engaged in unjustified excessive force when they handcuffed him, stripped him, and took him to segregation. He claims that Evens and Habrich laughed and dragged him naked through the facility where he was seen by female personnel. He alleges that Defendants Korte and Adams were present but failed to intervene.

Plaintiff alleges that he grieved the incident and was thereafter subjected to retaliation by Defendant Officers Rine, Dodds, Albert, Mountain and Miller. Defendants have filed a reply to

Plaintiff's response in which they assert that Plaintiff has waived his retaliation claim as he did not respond to Defendants' motion for summary judgment on this issue.

Plaintiff was deposed twice in this case, once on January 19, 2017, and again on August 9, 2018, after filing the amended complaint. Plaintiff testified that during the April 12, 2014 shakedown, Defendant Myers entered his cell and ordered Plaintiff and his cellmate to "strip out." Plaintiff was wearing boxer shorts, pants, a shirt and shoes and socks. He began to comply, removing one sock and one shoe, and unbuttoning his pants. At that point, Defendants Evans and Habrich allegedly rushed into the cell. They ordered Plaintiff's cellmate to face the wall and placed Plaintiff on the floor, sitting in a bent over position, next to the toilet. They told Plaintiff to remain calm, as they were there to extract his cellmate. Plaintiff claims he did nothing wrong but, notwithstanding, was extracted and taken to segregation.

Defendant Myers has submitted an affidavit attesting that he was not the individual who placed Plaintiff in handcuffs. Defendant claims that he ordered Plaintiff to come to the front of the cell to begin the shakedown procedure. Plaintiff did not comply, and when Defendant repeated the order, Plaintiff shook his head "no." Defendant Myers attests that he stepped aside and members of the tactical team extracted Plaintiff from the cell.

While Plaintiff testified that Defendants Evens and Habrich extracted him from the cell, Defendants Evens has submitted an affidavit attesting that he and Habrich were merely an escort team. The cell extractions were done by other team members who then handed over to the escort team those inmates who were to be taken to segregation. The parties are in agreement that Defendants Evens and Habrich are the individuals who escorted Plaintiff to segregation.

Plaintiff claims that he was forced to walk even though his unbuttoned pants fell to his ankles and he was wearing only one shoe. Plaintiff asserts that he was forced to walk with his

head down between his legs, alternating between walking frontwards and backwards. Plaintiff asserts that all the while, Defendants pulled upward on his hands, which were cuffed behind his back. Plaintiff had difficulty walking due to the position he was in and due to his pants being at his ankles, and repeatedly fell. He claims that when this happened, he was forcibly dragged. At one point, one of the Defendants, believed to be Habrich, stepped on Plaintiff's pants, forcibly removing the pants, undershorts and shoe.

Plaintiff alleges that he was dragged the rest of the way to the segregation unit, naked from the waist down. Plaintiff believes that female staff in the healthcare unit were able to see him in this condition. He testified that Nurse Steele who treated him later, asked if he was the one transported without pants. Plaintiff's testimony as to whether the nurse actually observed him naked is somewhat equivocal. He claimed both that "She [Nurse Steele] seen it" and "They were probably watching out the window and seeing it." [ECF 112-3 p. 9].

Plaintiff claims that during the walk to segregation, an unidentified third officer exerted force against him. He claims that the officer dug his fingers in to pressure points behind Plaintiff ears and threatened to spray him with Mace. Defendants assert that Plaintiff was resisting by "dropping" his weight and continually arguing that it was "bullshit" and "bogus" that he was being taken to segregation. Plaintiff admitted that he continued in this manner even though the officers instructed him to stop talking.

Plaintiff asserted that the walk from his cell to the segregation unit was almost one-quarter of a mile. Plaintiff testified that his feet were injured due to being dragged a portion of this distance. Plaintiff was initially placed in a segregation holding cell but shortly thereafter taken to the healthcare unit. Plaintiff claimed to have a 2-inch long piece of skin hanging from his foot and that he had to be taken to healthcare in a wheelchair. [ECF 112-3 p. 9]. There, the

lacerations to his feet were cleaned and bandaged and he was given a tetanus shot. Plaintiff claimed that for the next several days he had to undergo regular dressing changes and that the record does not reflect this. He testified that he has residual scars on the bottom of his feet.

Defendant Evens has filed an affidavit claiming that he and Defendant Habrich were escort officers and did not extract Plaintiff from his cell. It is Defendant's recollection that he and Officer Habrich were standing near the main door of the A wing, when the extraction team brought Plaintiff to them. As the pair escorted Plaintiff through the R 4 housing unit, Plaintiff's pants fell down at least twice. Defendant Evens attests that he stopped, pulled up Plaintiff's pants and placed the waistband in Plaintiff's hand so he could hold them up.

Defendant Evens attests that as they exited the housing unit, Plaintiff began passively resisting by crying, dropping to his knees and protesting segregation placement. Defendant asserts that, out of safety concerns, the officers began walking Plaintiff backwards, bent at the waist, in an effort to exert more control. Defendant Evens claims that, as they were walking, Plaintiff's pants fell down again and he stepped out of his pants and shoe. Due to safety concerns, Defendants determined not to stop, and continued to walk Plaintiff to segregation. Another officer who followed, picked up Plaintiff's clothes and brought them to segregation.

Defendant Evens denies dragging Plaintiff and claims that they merely held him up when he dropped his weight. Defendant attests that, at times they would stop when Plaintiff dropped to his knees to rest. He asserts that he and Defendant Habrich would give Plaintiff ample time to catch his breath before they resumed the walk.

Plaintiff also asserts a retaliation claim. Plaintiff had grieved the April 12, 2014 incident and, subsequently grieved the lack of response to the grievances. He claims that Defendants

Officers Rine, Dodds, Albert, Mountain, and Miller subsequently harassed him in retaliation for his filing grievances.

Plaintiff alleges that Defendant Rine retaliated on June 29, 2014, when Plaintiff was being moved to a different cell. Plaintiff's property had been moved to the day room and Defendant was there, passing out medications. Defendant Rine observed that Plaintiff had a piece of tape on his television. Plaintiff admitted at his deposition that inmates are not allowed to possess tape. Defendant Rine removed the tape and, when Plaintiff objected, Defendant called Plaintiff a "fucking dumbass." As Defendant walked away, Plaintiff asked "[d]id you just call me a fucking dumbass?" Plaintiff claims that Defendant Rhine responded aggressively, asking if Plaintiff had a "problem." Plaintiff filed a grievance of the matter, requesting that Defendant be fired and that he, Plaintiff, be transferred to a prison where he could go to school. [ECF 1-1 p. 14].

Plaintiff also alleges retaliation by Defendant Dodds, the Food Supervisor. Plaintiff filed a grievance of the matter, asserting that on July 8, 2014, he was walking with his food tray when Defendant Dodds took it from him and threw it into the trash. Defendant Dodds claimed that Plaintiff had taken two pieces of cake, something Plaintiff denied. There was a verbal exchange between the two and Plaintiff was given another meal tray. The following day, Defendant Dodds requested Plaintiff's ID, asserting that Internal Affairs wanted the information relative to the prior day's incident. Plaintiff, confusingly, asserts that Defendant Dodds' request for his ID number is evidence that Defendant knew of his grievances against others and retaliated because of it.

Plaintiff filed a subsequent grievance, on July 9, 2014, directed against Defendant Albert. Plaintiff indicated that Plaintiff reported to the front of the wing to go to breakfast that morning.

As he approached, he was tucking in his shirt. Defendant Albert, a security officer in the "bubble" began tapping on the glass, claiming that Plaintiff should have appeared ready for breakfast, not tucking in his shirt as he walked. There was a verbal exchange and Defendant ordered that Plaintiff return to his cell without breakfast.

Plaintiff alleges another act of retaliation which occurred on July 12, 2014. On that day, Plaintiff spoke with Officer Mountain, previously identified as Kyle Mountain. Officer Mountain allegedly told Plaintiff that he was getting to be well known for "running his mouth." When Plaintiff responded, Defendant allegedly told him "that's what I mean, just shut your mouth." Plaintiff argued the point further to which Defendant reply "keep talking I'll be seeing you again." Plaintiff grieved this matter also and asserts that he never received a response. As noted, in his amended complaint, Plaintiff had identified the officer as Kyle Mountain. At the time of the second deposition, however, Plaintiff testified that the individual who retaliated against him was not Kyle Mountain, but rather his twin brother, Brant Mountain.

Plaintiff asserts against Defendant Miller that on November 11, 2014, Defendant retaliated by filing a false disciplinary charge against him. On that day, Plaintiff was wearing a shirt with cut-off sleeves. Defendant told him the shirt was "bogus" and demanded that Plaintiff take it off and hand it to him. Plaintiff claims that he held it out and when Defendant didn't take it, he allowed it to drop. Defendant claimed that Plaintiff threw the shirt in his face and ticketed him for staff assault and possession of contraband. Plaintiff was convicted of the offenses though he claims that the staff assault was downgraded to "insolence." Plaintiff testified that he was sentenced to 30 days in segregation though it is not clear if this was solely for the insolence or whether it included the contraband charge. Plaintiff testified that Defendant Miller's actions

were retaliatory as they were undertaken close in time to the grievances he had filed against the other Defendants. [ECF 112-3 p. 21].

In the amended complaint, Plaintiff also asserted claims against Warden Korte and Sergeant Adams for failure to intervene. Plaintiff testified, however, that he did not see either individual on April 12, 2014, and that he does not know what Defendant Adams looks like. He claims only that Defendants Korte and Adams must have been aware of the events as they were listed in the chain of command in the Operational Orders, issued in advance of the shakedown.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's

position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**ANALYSIS**

To sustain an Eighth Amendment for excessive force the Plaintiff must show that officials used force "maliciously and sadistically for the very purpose of causing harm," or, with "a knowing willingness that [harm] occur." *Hudson v. McMillian*, 503 U.S.1, 6-7 (1992) (internal quotation marks and citation omitted). This is so, as prison officials often make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* at 6-7. Generally, excessive force cannot be predicated upon a showing of *de minimis* force. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). If the force were more than *de minimis,* we must consider whether it "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S., at 7.

Here, Defendants Habrich and Evens assert that they were dealing with an uncooperative prisoner and used only the amount of force necessary to safely transport him to segregation. They assert that Plaintiff was resisting and, of necessity, had to be walked backwards and bend over, where he was more likely to trip. Defendant Evens attests that they held Plaintiff up during the walk, to prevent him from falling. He asserts that Plaintiff was dragged only for a few seconds each time this happened. Defendants note that at his deposition, Plaintiff denied having been punched or kicked, and did not claim that the Defendants were purposely dragging him. Defendants assert that they used no more than a *de minimis* amount of force in transporting Plaintiff.

Here, Defendants assert, and Plaintiff denies, that he resisted the officers by dropping his weight. Plaintiff claims, rather, that Defendants had no reason to transport him backwards and bend over, with his pants at his ankles. As a result, there remains a material issue of fact as to whether Plaintiff was resisting, whether force was necessary and, if so, the extent of the force necessary under the circumstances. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

While Defendants assert that they used only *de minimis* force, Plaintiff has testified that he had a 2-inch long piece of skin hanging from his foot and that Nurse Steele had to bring a wheelchair to transport him to the health care unit. There, he was given a tetanus shot and his feet were bandaged. Plaintiff claims that over the next several days he went through several other bandage changes though they were not documented in the record. The records themselves establish that Plaintiff had superficial abrasions to his left great toe and bilateral heels and with bleeding and swelling and that "dead skin" was removed. Here Plaintiff has identified a contested material issue of fact to overcome Defendant Evens and Habrich's summary judgment motion as to the use of force. This claim will proceed.

Defendants Evens and Habrich also assert that they are entitled to qualified immunity as to the excessive force claim, as they did not violate a clearly established constitutional right. Governmental actors performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In deciding whether qualified immunity applies, a court must determine (1) whether the facts that the plaintiff alleged in his or her pleadings or shown during discovery make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the

time of defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). In this case the Court has found that Plaintiff has identified a material issue of fact to support that Defendants subjected him to excessive force. A law is "clearly established" if it would be sufficiently clear to a reasonable individual that his actions would violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, the Court finds that the law as to excessive force is clearly established and that, if Defendants acted as alleged, they would reasonably understand that they were violating Plaintiff's constitutional rights. As a result, Defendants' qualified immunity defense is DENIED, with leave to reassert at trial.

As to Defendant Myers, Plaintiff testified that Defendant initiated the shakedown, ordered Plaintiff and his cellmate to strip and placed Plaintiff in handcuffs. He did not, however, participate in transporting Plaintiff to segregation. When asked the nature of the excessive force exerted by Defendant Myers, Plaintiff answered that Myers lied when he wrote Plaintiff a disciplinary ticket and, further, did not prevent him being taken to segregation. He did not testify, however, that Defendant Myers witnessed the manner in which he was taken to segregation.

Plaintiff's claim that Defendant Myers participated in the shakedown fails to establish that he personally participated in the alleged excessive force. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (to be liable under § 1983, a defendant must be "personally responsible for the deprivation of a constitutional right"), quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001). The allegation that Defendant Myers lied in issuing Plaintiff a disciplinary ticket, asserted in support of the excessive force claim, also fails to overcome Defendants' motion for summary judgment. This is the only claim asserted against Defendant Myers and he is dismissed.

As noted, Plaintiff also alleges that Defendants Habrich and Evens undertook an unjustified strip search when they dragged him through the facility, naked from the waist down. A strip search will violate the Constitution if it is maliciously motivated, unrelated to institutional security, and without penological justification. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). *See also*, *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (the Constitution forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering.")

Here, the parties dispute who removed Plaintiff's pants, undershorts and shoe. Plaintiff claims that he believes that Defendant Habrich stepped on his pants, forcibly removing them. Defendants claim that Plaintiff removed them himself. Defendants also claim that due to security concerns, they felt the need to transport Plaintiff while partially nude. Plaintiff denies resisting and claims that he posed no security concerns being escorted by two officers while handcuffed, bent over and often walking backwards. Plaintiff has sufficiently identified disputed, material issues of fact to overcome Defendants' motion for summary judgment as to this issue.

Plaintiff has also pled that various Defendants subjected him to retaliation for his grieving the incidents of April 12, 2014. Defendants have filed a reply to Plaintiff's summary judgment response, noting that Plaintiff's response did not address the retaliation claims, and that their motion must be granted as to this issue. A party's failure to respond to a motion for summary judgment, however, does not automatically result in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995); *see also Archer Daniels Midland Co. v. Whitacre*, 60 F. Supp. 2d 819, 823 (C.D. Ill. 1999). Instead, "the court can take the movant's statement of facts as true and determine if those facts entitle the movant to

judgment as a matter of law." *Czajkowski v. City of Chicago, Ill.*, 810 F.Supp. 1428, 1433 (N.D.Ill. Dec. 3, 1992).

Here, Plaintiff has alleged that Defendants Rine, Dodds, Albert, Mountain, and Miller retaliated against him for his filing grievances related to the April 12, 2014 shakedown. Prisoners have a protected First Amendment right to file lawsuits and grievances. *Dobbey v. IDOC*, 574 F.3d 443, 446 (7th Cir. 2009). A prisoner may not be disciplined for filing a grievance or lawsuit as "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

To establish First Amendment retaliation, Plaintiff must successfully allege that; (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

As Plaintiff has alleged that Defendants Rine, Dodds, Albert, Mountain and Miller retaliated for his filing grievance, he has identified a protected First Amendment activity. The Court will now examine whether Defendants' alleged retaliation satisfies the second prong of the retaliation test, that it would deter "a person of ordinary firmness" from future First Amendment activity. *Surita v. Hyde*, 665 F. 3d 860, 878 (7th Cir. 2011). To determine whether another might be deterred under like circumstances, we look to see what injury Plaintiff has suffered. If there is no injury there is no "adverse consequence" and no deterrent to free speech. *Power v. Summers,* 226 F.3d 815, 820 (7th Cir. 2000).

Here, Plaintiff fails to assert a deprivation from the conduct of Defendant Rine. Defendant Rine removed the tape from Plaintiff's television and allegedly called him a "dumbass." This is insufficient to allege "a deprivation that was so substantial it would deter a reasonable person from exercising his rights in the future." *Wilson v. Rensing*, No.15- 249, 2018 WL 784053, at *3 (S.D. Ill. Feb. 8, 2018) (one month in segregation and demotion to C class would not deter a reasonable person); *see also*, *Harper v. Davis*, No. 09-0878, 2011 WL 3841703, at *7 (N.D. Ill. Aug. 23, 2011). Plaintiff's claim that Defendant Dodds threw out his tray, replaced it with another, and told him that Internal Affairs wanted his inmate number, also fails to allege a substantial deprivation.

Plaintiff's claim as to Defendant Albert faces the same fate. Defendant cited Plaintiff for not having his shirt tucked in and ordered him to return to his cell without breakfast. The failure to receive one meal is not an injury so substantial that it would chill future First Amendment activity by a person of ordinary firmness. *See Surita*, 665 F. 3d at 878.

In his retaliation claim, Plaintiff had originally identified Kyle Mountain as the individual who complained that Plaintiff was "running his mouth." At his deposition, however, Plaintiff indicated that it was not Kyle Mountain but, rather, his brother Brant Mountain, who made the objectionable statement. Regardless, Plaintiff fails to overcome Defendants' motion where he does not assert that he suffered any cognizable injury due to Officer Mountain's statements. *See Wilson*, 2018 WL 784053, at *3.

Plaintiff's final retaliation claim is asserted against Defendant Miller. Plaintiff alleges that Defendant falsely accused him of throwing his shirt into Defendant's face. Plaintiff does not address that the cut-off shirt he was wearing was identified as contraband and that he received a ticket for this as well. Plaintiff was found guilty of insolence and, perhaps,

possession of contraband though this is not clear, and sentenced to 30 days segregation.

Here, being sentenced to 30 days in segregation, without more, is not enough to establish a detriment that would likely chill future First Amendment activity. *See Wilson*, 2018 WL 784053, at *3. Even if the Court found otherwise, Plaintiff has failed to establish that his grievances were a motivating factor in Defendant Miller's writing the ticket. This is so, as Plaintiff testified that he did not know whether Defendant Miller was aware of grievances he had filed against others. [ECF 112-3 p. 15]. *See Wheeler v. Radtke*, 694 Fed. Appx. 1023, 1025–26 (7th Cir. 2017) (it is plaintiff's burden "to present sufficient evidence" that defendant knew of the complaints which allegedly prompted the retaliation.)

Plaintiff also alleged that Defendants Korte and Adams failed to intervene to prevent the excessive force. To be liable for a failure to intervene, a Defendant must be aware that excessive force was being used and have had a realistic opportunity to intervene to prevent the harm. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994). Here, Plaintiff testified that Defendant Korte had issued Operational Orders that he and Defendant Adams were to be notified of inmates taken to segregation during the shakedown. Plaintiff offers nothing to support, however, that either Defendant was aware of the alleged conduct while it happened and had a realistic opportunity to intervene to prevent it. Plaintiff, therefore, fails to overcome Defendants' motion for summary judgment as to the alleged failure to intervene by Defendants Korte and Adams.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion for Summary Judgment [ECF 112] is GRANTED as to the claimed excessive force by Defendant Myers, the failure to intervene by Defendants Korte and Adams, and the Retaliation by Defendants Rine, Dodds, Albert, Mountain and Miller.

Defendants' Motion for Summary Judgment [ECF 112] is DENIED as to the claimed excessive force and unconstitutional strip search by Defendants Evens and Habrich. These claims will proceed. The Clerk of the Court is directed to DISMISS Defendants Myers, Korte, Adams, Rine, Dodds, Albert, Mountain and Miller.

2) The parties are, within 14 days, to identify any outstanding matters and to suggest a timeframe for the jury trial of this matter.

3/13/2019
ENTERED

s/Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE